Judge Underwood
delivered the opinion oí the cou't.
The principal questions presented by the record, relate to the validity of the following entry, and the proper mode of surveying it. “November 27th, 1783, George Taylor, assignee, &c. and *364 Joseph Kelly, assignee, &c. enter 5 791 \ acres of land, on j.w0 treasury warrants, No. 9,406, and 18,538, to be held in proportion to the number of acres in each man’s name, lying on Cabin Creek, beginning two _miles above the first fork of said creek, on the itividing ridge between the two forks, running thence up the right hand fork of said creek, 1400 poles, thence at right angles from each end <>/ this line, towards the left hand fork, for quantity.”
Congenial, with chancery practice, to amalgamate suits, when the cause of action is joint and the partios interested, are thu* brought before the court.
Oase of entry, to runn i a (Ta'ri 0elltu>1" grneraTctiurse of .he creak fnr the na-n; from'th^ be-*' notTíí¡ie ril'd f„iho gin ins.to a p 'int o i tho cr *• k,th.* dis-ta ice called. is the base.
In virtue of the foregoing entry, a patent issued in the names of Taylor & Kelly, jointly. Their heirs brought sejrerate hills, in order to set up I he entry against elder grants. These suits were after-wards amalgamated, and proceeded as a suit in behalf of the heirs of both patentees. We do not perceive in this proceeding, the violation of any principle settled in the case of Robert’s heirs vs. Jfllliott’s heirs &e. 3 Mon. 398. Here all the parties interested in the patent, were before the court, as complainants, and a decision for or against, would have hound all, and therefore, they come within the reason of the rule, which requires all interested, to be before tiie court, in order to prevent cutting up a single cause of action, into many suits.
Cabin Creek was notorious at the date of the en-try- The first fork was an object which could not have been mistaken, and from that place, the ridge C0Ü^ eiisily have been traced, the distance of two U1*l0!i to f*le point where the entry located the beginniug. This point, we think could have been ascertained with certainty, upon reasonable diligence, and t‘ie ose ordinary means. Having readied it, the subsequent locator would next regard the location of Taylor’s & Kelly’s base Sine. Ilotv should that be done? We answer, by running from the beginning, :l point on the right hand fork of Cabin Creek, 14)0 poles distant. A straight line from tile beginning, to such point, would constitute the base, which being ascertained, there could be no difficulty in constructing the survey. The circuit court, instead of bleating the base as above, directed that it should run from the beginning, parallel to the general course of the right hand fork, or rather parallel to the general course of a part of the right hand lork. We do not *365 perceive any thing in the entry, which indicates the prop) iety oi running stu h a parailelimc for the base, nor do we i now any prim iple or adjudged case w inch will aid in pointing out that part oí the right hand folk, the general course ot vvlmh should govern in running the paiallel line. Should the general course oí the whole creek, hour its mouth in the Ohio, to its sourt e, he ascertained, or from the iorks upwards, or from the point assumed by the court, on the right hand folk, about two miles above the forks? Neither the entry, nor any rule known-to us will enable us to give a satisfactory amwer. Entries should be understood, as thoie upon the ground, when they were made, would have understood them. According to this rule, it seems to us, that a person in 3 783, or at any time since, acquainted wit it the import of the language of the entry, placed at the beginning, would have said, the locator meant to go “thence up the right hand fork of the creek,” and not to depart from it by running a parallel line thereto, or to any part of it, and that the locator did not intend to make the windings of the creek, the boundary of his survey, hence he called for the general course, indicating thereby his intention to he governed by a straight line, instead of the meanders. This construction will make the general course of the creek, a houirclary, from the [joint where the line from the beginning strikes it, to tiie termination of the 1400 [toles, upon the creek, and thus respect will be paid to ti e call, to run up the creek its general coime. If the beginning had been upon the creek, there could be no doubt of the propriety oí this consti uition. We are of opinion that the location of the beginning, on the rit'ge between the two creeks, does not change it, hut that the locator intended to have his upper corner on the termination of his 1400 poles from the beginning, located on the creek, in the same manner as would have been obviously proper, had the creek run by tire beginning.
Wl'rn <lif>re i- > oi ; i ■ Ihe crin 0f ¡in ■ i.tn b . t f fin -i if., destroy it, the adopted. eimpinu-.t on most nnf-ivorabio to cJaim ants must bo
*365 The court erred in its construction of the entry, and therefore, the decree must he reveiscd, and the cause remanded for a decree in conformity to this opinion If in extending a line 14 .0 peles, uj tin-•right hand fork* lrom the placevl beginning, on the *366 ridge, it should pass the fork at 45 on Hord’s plot, then, as there are doubts which is the main fork, above tiiat point, the court must fix the termination of the 1400 poies, on that fork most unfavorable to-the complainants. In other words, the entry should onty sustained for the land common to surveys made upon base lines, terminating on both the forks above 45 on Hord’s plot, and covered by the patent of cornpia¡nautS- "We do not mean to decide upon the effect of the statute of limitations, relied on by the defendants, or some of them, in argument before this court. They have not disturbed' the decree, or offered to do it. Upon this point, the circuit court is-left untrammeled upon the return of the cause.
Costs given against those onlywho were _ already benefitted by the odCrCNo°c?st"s for or agaiííst those Whose doubifn/1 WaS u ‘
The decree must be reversed, but as it is probable that the error of the court did not prejudice the coinplainants, in respect to many of the defendants, because, by surveying according to the entry, they will not be included, we think it would be improper to ma^ie su°h defendents answerable for costs in this court. The circuit court ought to have caused the entry to be surveyed, as directed in this opinion, be-^ore enfeting a final decree, and then the defendants should have been compelled to relinquish such portions of the land as they held, found to be common to the survey as canned into Grant, and the survey as directed. We cannot tell how the defendants may be affected by the survey of the entry as herein directed, and on that account we have deemed it proper to reverse as it respects all the defendants; but, owing to the uncertainty which exists, whether a large portion of the defendants, will be affected by the survey, as it should have been made, a majority of the court, are of opinion, that such defendants should neither recover, or he compelled to pay costs in this court. But that the complainants should have a decree for costs in this court only, against James Fyffe, William Watkins, Jonathan M. Grover; the heirs of James Savage; the heirs of Robert Taylor, John Watkins, William Crawford, Joseph Fitch, James Burkiy, James Rowland, Isaac Smi.h, and one Hendrickson; these being the only persons who resisted the complainant’s right, and who appear to us to have been clearly benefitted by the error com *367 ■mitted by the court, in the manner of surveying the entry.
Jomt ^T~ p]a¡n.uits, one dies after h.-arin?: aid. writ abated, the decree >«>¡yj - court below as to revivor.
Crittenden, Wicklijfe, and Woolley, for plaintiffs; Mills and Brown, for defendants.
Since the hearing of this cause, the suit in this court has been abated, as to the heirs of Kelly. Upon the return of the cause, the circuit court must act upon this opinion, .in favor of Taylor’s heirs , 1 1